**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| P.J., a minor, by and through his parents and natural guardians, BARBARA and DAREN JENSEN; BARBARA JENSEN, individually; and DAREN JENSEN, individually, | |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | **Case No. 2:05cv739** |
| STATE OF UTAH; INTERMOUNTAIN HEALTH CARE, INC.; KARI CUNNINGHAM, in her individual capacity; RICHARD ANDERSON, in his individual and official capacities; LARS M. WAGNER, in his individual capacity; DAVID L. CORWIN, in his individual capacity; CHERYL M. COFFIN, in her individual capacity; KAREN H. ALBRITTON, in her individual capacity; SUSAN EISENMAN, in her individual capacity; and JANE and JOHN DOE, in their individual capacities, | **District Judge Dale A. Kimball** **Magistrate Judge Paul M. Warner** |
| Defendants. | |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Paul G. Cassell pursuant to 28 U.S.C. § 636(b)(1)(A).[1]  Before the court are (1) Lars M. Wagner ("Dr. Wagner") and Karen H. Albritton's ("Dr. Albritton") (collectively, "Defendants") motion to

---

[1] On November 7, 2007, this case was reassigned to District Judge Dale A. Kimball who reaffirmed the prior order of reference to Magistrate Judge Warner.

quash subpoenas to Cincinnati Children's Hospital and the Children's Oncology Group (the "COG"),[2] (2) Parker Jensen ("Parker"), Barbara Jensen ("Mrs. Jensen"), and Daren Jensen's ("Mr. Jensen") (collectively, "Plaintiffs") motion to compel relating to a subpoena served on the University of Utah School of Medicine (the "University"),[3] (3) Defendants' motion to compel production and inspection of Plaintiffs' computers,[4] (4) Defendants' motion to compel responses to interrogatories and requests for production of documents,[5] (5) the Guardian ad Litem ("GAL") and GAL attorney Mollie McDonald's (collectively, "Movants") motion to quash a subpoena served on the GAL,[6] (6) Plaintiffs' motion to strike and quash a subpoena served on the GAL,[7] (7) Plaintiffs' motion to strike and quash a subpoena served on Blake Nakamura ("Mr. Nakamura"),[8] (8) Plaintiffs' motion to quash a second subpoena served on Mr. Nakamura,[9] (9) Plaintiffs' motion to quash the Modern Health Clinic subpoena,[10] (10) Defendants' motion to

---

[2] *See* docket no. 185.

[3] *See* docket no. 222.

[4] *See* docket no. 197.

[5] *See* docket no. 201.

[6] *See* docket no. 205.

[7] *See* docket no. 209.

[8] *See* docket no. 211.

[9] *See* docket no. 227.

[10] *See* docket no. 230.

compel the Modern Health Clinic to respond to the subpoena,[11] (11) Defendants' motion to

extend the fact discovery deadline,[12] (12) Defendants' motion for a rule 16 scheduling and case

management conference,[13] and (13) Defendants' motion for an extension of time for the deadline

for defendants' expert reports.[14]   A hearing on the motions was held on October 24, 2007.

Plaintiffs were represented by Roger P. Christensen, Karra Porter, and Barton H. Kunz.

Defendants were represented by Andrew M. Morse and R. Scott Young.  Before the hearing, the

court carefully considered the motions, memoranda, and other materials submitted by the parties.

After considering the arguments of counsel, reviewing the supplemental briefing, and taking the

motions under advisement, the court issues the following order.

## I.  DISCUSSION

### A.  Defendants' motion to quash subpoenas to Cincinnati Children's Hospital and the COG

### (1) Cincinnati Children's Hospital subpoena

Plaintiffs served a subpoena on Cincinnati Children's Hospital seeking all documents

related to Dr. Wagner's application for a position at the hospital.  Cincinnati Children's Hospital

has apparently produced the records without objection prior to the filing of this motion to quash.

Plaintiffs have reviewed the documents and do not oppose the motion to quash with respect to

---

[11] *See* docket no. 247.

[12] *See* docket no. 213.

[13] *See* docket no. 225.

[14] *See* docket no. 243.

those documents.  Accordingly, the court GRANTS Defendants' motion to quash with respect to

the subpoena served on the Cincinnati Children's Hospital.

**(2) The COG subpoena**

Plaintiffs also served a subpoena on the COG, a cooperative of pediatric oncology

professionals and institutions, of which Primary Children's Medical Center ("PCMC") is a

member.  The subpoena requests the following documentation:

> 1. [COG] Protocol #AEWS0031, "Trial of Chemotherapy Intensification through
> Interval Compression in Ewing Sarcoma and Related Tumors," including the
> original protocol and all amendments thereto.
> 2. Any and all correspondence to any person(s) associated with [PCMC] in Salt
> Lake City, Utah, with respect to the study identified in No. 1 above.
> 3. Any applications or associated documents, including but not limited to
> correspondence, e-mails, C.V.'s, letters of recommendation, relating to Cheryl
> Coffin's interest or application for any position within the [COG] organization.
> 4. All documents reflecting expectations that [the COG] had of member
> institutions, including but not limited to, participation in studies, between the
> years 2000 and 2005.

**(a) The COG subpoena item nos. 1 and 2**

Defendants argue that the information regarding the COG Protocol #AEWS0031 (the

"Protocol") is irrelevant because Parker was never invited, nor was he eligible, to participate in

the Protocol.  Specifically, Defendants assert that Mr. and Mrs. Jensen refused to allow Parker to

undergo a bone marrow aspiration, which was required to determine whether or not the cancer

had metastasized.  If the cancer had metastasized, Parker could not have been treated under the

Protocol as only patients whose Ewing Sarcoma was localized were eligible.  Defendants also

assert, albeit in their reply memorandum, that the requested documents from the COG are

privileged under Utah Code Annotated § 26-25-3 (the "peer/care review statute").

The court concludes that the information regarding the Protocol is relevant and discoverable pursuant to rule 26(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b) (establishing that parties may obtain discovery of any nonprivileged matter "relevant to the claim or defense of any party," which covers any request "reasonably calculated to lead to the discovery of admissible evidence"). Plaintiffs' theory of their case is that Defendants reported Mr. and Mrs. Jensen to the Division of Child and Family Services ("DCFS") and made omissions and misrepresentations to the juvenile court based at least in part on a desire to get Parker enrolled in the Protocol even before a diagnosis of Ewing's Sarcoma had been confirmed. The court concludes that whether Parker was ultimately enrolled or invited to participate in the Protocol has no bearing on the relevancy of the requested information.

Furthermore, the court finds that the peer/care review statute does not apply to the Protocol subpoenaed from the COG. In their reply memorandum, Defendants confusingly refer to the documents subpoenaed from the COG as the Institutional Review Board (the "IRB") file without any explanation. Defendants have failed to demonstrate how the Protocol subpoenaed from the COG, and not the Protocol contained in the IRB file, is protected under the peer/care review statute or how the statute somehow applies to the COG. Accordingly, Defendants' motion to quash as to the COG subpoena item nos. 1 and 2 is DENIED. The COG is ordered to produce documents responsive to item nos. 1 and 2 in the subpoena within thirty (30) days of the date of this order.

### (b) The COG subpoena item no. 3

Defendants argue that documents relating to Dr. Coffin's application for a position as a

COG reviewer are not relevant to Plaintiffs' case.  Plaintiffs, however, contend that Dr. Coffin's

application materials are relevant because she was applying for a position as a COG reviewer for

soft tissue tumors in children, including Ewing Sarcoma, during the time period in question.

While Dr. Coffin testified in her deposition that she was unaware of the COG Protocol until she

read Dr. Wagner's deposition, Plaintiffs assert that Dr. Coffin likely would have discussed the

COG Protocol, and perhaps Parker's case, in her application process.  Plaintiffs further contend

that she likely would have known about the Protocol because of the positions she held as the

Medical Director of Pathology Services and Chief of Pathology at PCMC and the Division Head

of Pediatric Pathology at the University.

     The court concludes that the materials relating to Dr. Coffin's interest or application for

any position within the COG organization, including correspondence, e-mails, C.V.'s, and letters

of recommendation are potentially relevant.  The court is also cognizant of the sensitive nature of

personnel records and, accordingly, will require disclosure only upon the entry of an appropriate

protective order.  Thus, Defendants' motion to quash as to subpoena item no. 3 is DENIED, and

the COG is ordered to produce Dr. Coffin's records within thirty (30) days of the date of this

order subject to an appropriate protective order to be negotiated by the parties.

**(c) The COG subpoena item no. 4**

     Plaintiffs also seek to discover information relating to expectations that the COG had of

its member institutions from 2000 to 2005.  The court concludes that Plaintiffs have adequately

demonstrated the relevance of this information for the same reasons as set forth in subsection (b)

above.  Accordingly, Defendants' motion to quash as to subpoena item no. 4 is DENIED, and the

COG is ordered to produce said documents within thirty (30) days of the date of this order.

**B.  Plaintiffs' motion to compel relating to a subpoena served on the University**

Plaintiffs served a subpoena on the University seeking:

1. Any and all documents in your possession or control relating to the evaluation process also referred to as the "Retention, Promotion and Tenure" guidelines for the following faculty or staff members: J. Martin Johnston, Lars M. Wagner, Karen H. Albritton, Cheryl Coffin, for the year 2001 and subsequent years. Please include all documents submitted by the above-named faculty or staff for annual reviews, written reviews provided to the faculty or staff, and any and all other documents related to the annual reviews provided to the faculty or staff, and any and all other documents related to the annual review process for the individuals identified above.
2. Any and all documents submitted to the [IRB] regarding approval of the [COG] Protocol AEWS0031, "Trial of Chemotherapy Intensification through Interval Compression in Ewing's Sarcoma and Related Tumors."

**(1) The University subpoena item no. 1**

Plaintiffs seek to discover the personnel records of Drs. Johnston, Wagner, Albritton, and Coffin.  Defendants assert that the personnel records of the above-named doctors are not discoverable because they are (1) irrelevant to Plaintiffs' claims and (2) protected under the Utah Government Records Access and Management Act ("GRAMA").  *See* Utah Code Ann. § 63-2-207.

Plaintiffs contend that the personnel records of Drs. Wagner, Albritton, and Coffin are relevant because it seems likely that, as part of their evaluation process, which includes reports by the employees as to their activities and accomplishments, the doctors would have referred to their goals, experiences, and efforts regarding clinical trials, and perhaps specifically to Parker's case.  Plaintiffs also assert that while Dr. Johnston had left the University by 2003, his

relationship with PCMC doctors is a central point of dispute in this case, and, therefore, his

information is relevant to their case.

The court concludes that Plaintiffs have demonstrated the relevancy of the personnel

records.  Furthermore, assuming, without deciding, that the requested personnel records are

protected under GRAMA, a court may order production of protected documents if

> (a) the record deals with a matter in controversy over which the court has
> jurisdiction;
> (b) the court has considered the merits of the request for access to the record; and
> (c) the court has considered and, where appropriate, limited the requester's use
> and further disclosure of the record in order to protect: (i) privacy interests in the
> case of private or controlled records; . . . and (iii) privacy interests or the public
> interest in the case of other protected records;
> (d) to the extent the record is properly classified private, controlled, or protected,
> the interests favoring access, considering limitations thereon, outweigh the
> interests favoring restriction of access.

*Id.* § 63-2-202(7).  The court concludes that each of the above factors has been satisfied.

Accordingly, Plaintiffs' motion to compel with respect to subpoena item no. 1 is GRANTED,

and the University is ordered to produce the subpoenaed documents within thirty (30) days of the

date of this order.  Again, because the court recognizes the sensitive nature of personnel records,

disclosure of the requested records is ordered subject to an appropriate protective order to be

negotiated by the parties.

**(2) The University subpoena item no. 2**

Plaintiffs ask this court to order the University to produce the IRB file.  Defendants

counter that the requested documents are (1) irrelevant because Parker was never offered the

opportunity to participate in the Protocol and (2) privileged under the peer/care review statute.

The court concludes that the information regarding the Protocol contained in the IRB file is relevant and discoverable pursuant to rule 26(b) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b). The court must now determine whether the IRB file is privileged under the peer/care review statute.

The peer/care review statute provides, in relevant part, that "[a]ll information, interviews, reports, statements, memoranda, or other data furnished by reason of this chapter, and any findings or conclusions resulting from those studies are privileged communications and are not subject to discovery, use or receipt in evidence in any legal proceeding of any kind or character." Utah Code Ann. § 26-25-3. These protections extend to "[a]ny person, health facility, or other organization" that provides "(a) information . . . ; (b) interviews; (c) reports; (d) statements; (e) memoranda; and (f) other data relating to the condition and treatment of any person." *Id.* § 26-25-1(1). This information may be provided to, inter alia, "scientific and health care research organizations affiliated with institutions of higher education" and "any health facility's in-house staff committee" for "(a) study and advancing medical research, with the purpose of reducing the incidence of disease, morbidity, or mortality; or (b) the evaluation and improvement of hospital and health care rendered by hospitals, health facilities, or health care providers." *Id.* § 26-25-1(2)(h) & (3).

While Defendants contend that the IRB file falls squarely within the purview of this statute, the court does not agree. The Utah Supreme Court has held that only documents prepared "specifically for" the review process are privileged under the statute. *Benson v. IHC Hosp. Inc.*, 866 P.2d 537, 540 (Utah 1993). The IRB file was not prepared pursuant to the

peer/care review statute; it was prepared because it is required under federal law.  IRBs are

federally mandated entities that review and approve or reject proposed research protocols

involving human subjects.  *See* 42 U.S.C. § 289 ("The Secretary shall by regulation require that

each entity which applies for a grant, contract, or cooperative agreement under this chapter for

any project or program which involves the conduct of biomedical or behavioral research

involving human subjects submit . . . that it has established . . . a board (to be known as an

'Institutional Review Board') to review biomedical and behavioral research involving human

subjects conducted at or supported by such entity in order to protect the rights of the human

subjects of such research."); 21 C.F.R. § 56.101 (requiring a university conducting clinical trials

to establish IRBs for the purpose of "protect[ing] the rights and welfare of human subjects

involved in" clinical trials); *see also* 21 C.F.R. § 56.103 (requiring IRBs to approve all clinical

trials before initiation and requiring continuing review of clinical trials while they are being

conducted).  Thus, because the court finds that the IRB file was not specifically prepared for

review purposes, it is not protected from discovery by the peer/care review statute.

Furthermore, a state peer/care review privilege is not binding in this case or on this court.

Privileges in federal-question cases generally are "governed by the principles of the common law

as they may be interpreted by the courts of the United States in the light of reason and

experience."  Fed. R. Evid. 501.  The United States Supreme Court has cautioned against

expanding the role of privileges in discovery.  *See Univ. of Pa. v. EEOC*, 493 U.S. 182, 189

(1990) ("[A]lthough [r]ule 501 manifests a congressional desire not to freeze the law of privilege

but rather to provide the courts with flexibility to develop rules of privilege on a case-by-case

basis, we are disinclined to exercise this authority expansively.").

While the Tenth Circuit has not recognized physician peer/care review privileges nor has it had the opportunity to do so, a majority of federal courts have refused to recognize said privileges under federal law. *See, e.g.*, *Nilavar v. Mercy Health System*, 210 F.R.D. 597, 604 (S.D. Ohio 2002) (citing to numerous federal cases in which state peer review privileges are not recognized). In addition, the United States Supreme Court has refused to adopt privileges for *academic* peer review materials. *See Univ. of Pa.*, 493 U.S. at 189 ("[W]e cannot accept the [petitioner's] invitation to create a new privilege against the disclosure of peer review materials.").

Based on the foregoing, the court concludes that the peer/care review privilege does not apply. Accordingly, Plaintiffs' motion to compel with respect to subpoena item no. 2 is GRANTED. At the motion hearing and in the memorandum in opposition to Plaintiffs' motion, counsel for Defendants asserted that the IRB file includes medical information about the Protocol's 500 participants. The court has examined the IRB file that Defendants submitted for in camera review and has been unable to locate any sensitive medical information that could identify specific individuals. As a result, the court orders the University to produce the IRB file to Plaintiffs in its entirety within thirty (30) days of the date of this order.

### C. Defendants' motion to compel production and inspection of Plaintiffs' computers

On March 1, 2007, Defendants served a request to inspect Plaintiffs' computers. In the request, Defendants asked Plaintiffs to "make all computers used by [P]laintiffs Daren Jensen, Barbara Jensen[,] and Parker Jensen from July 19, 2002, through the present time, available for

inspection on April 2, 2007," at Defendants' counsel's firm.  Plaintiffs objected to the request as invasive of their privacy but agreed to allow inspection by a neutral third party mutually chosen by the parties.

Plaintiffs and Defendants were unable to reach a satisfactory agreement regarding inspection of the computers.  As a result, Defendants filed a motion to compel production and inspection of Plaintiffs' computers.  In their memorandum in support, Defendants state that they are seeking the "precise computer research [Plaintiffs] conducted on [Parker's] diagnosis, symptoms, and treatment options" in order to determine what basis Plaintiffs have for claiming Defendants misrepresented Parker's disease and diagnosis.  Defendants also assert that "[t]he data on these computers will also reveal documents relevant to the litigation, including emails, that were altered, deleted, or not timely produced."  Plaintiffs opposed the motion by arguing that Defendants had failed to demonstrate relevancy, but again Plaintiffs agreed to have a third party inspect the computers consistent with the method set forth in *G.D. v. Monarch Plastic Surgery*, 239 F.R.D. 641, 645 (D. Kan. 2007).

The court finds that Defendants' request to inspect Plaintiffs' computers is overly broad. As written, it would allow Defendants access to all documents stored on Plaintiffs' computers. Because the request fails to specify what Defendants are seeking, the court has had to infer the specifics of Defendants' request from their memoranda in support of their motion to compel. Furthermore, Defendants have failed to provide any support for their contention that Plaintiffs computers contain documents that "were altered, deleted, or not timely produced."  That said, Defendants are entitled to discover the research Plaintiffs conducted and other relevant

12

nonprivileged materials regarding Parker's diagnosis, symptoms, and treatment options. Because Plaintiffs have provided only those research documents that they saved or printed, the court will allow Defendants limited access to the relevant documents on Plaintiffs' crashed hard drive and computer. Accordingly, the court GRANTS IN PART and DENIES IN PART Defendants' motion to compel. The court orders production and inspection pursuant to the method set forth in *Monarch* but modifies it as outlined below. *See Monarch*, 239 F.R.D. at 648-50.

Plaintiffs shall make Plaintiffs' home computer and crashed hard drive available for inspection. Plaintiffs and Defendants shall mutually decide upon a third-party computer expert to examine the computer and crashed hard drive and to retrieve the data. The expert must sign a protective order to be agreed upon by the parties. The inspection shall be conducted in the presence of Plaintiffs' counsel only; Defendants and their counsel shall be excluded from the inspection and data retrieval process. The inspection shall cover materials from May 6, 2003, the date Plaintiffs were first informed the biopsy was malignant, to the present. Plaintiffs' counsel, in collaboration with the expert, shall produce responsive documents, including but not limited to e-mails, regarding the research conducted by Plaintiffs on Parker's diagnosis of Ewing Sarcoma, symptoms, and treatment options. For any documents claimed privileged or otherwise protected, Plaintiffs' counsel shall create and provide a privilege log.

### D. Defendants' motion to compel responses to interrogatories and requests for production of documents

Defendants move to compel responses to Defendants' Interrogatory Nos. 2, 5, 6, 7, 8, and 9 (the "Interrogatories") and the corresponding Requests for Production of Documents Nos. 2, 8,

9, 10, 11, and 12 (the "Requests").  Plaintiffs assert that the information requested in the Interrogatories and the Requests is protected by the work-product privilege pursuant to rule 26(b)(3) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(b)(3) ("In ordering discovery . . . , the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.").  Plaintiffs specifically take issue with the phrase "tending to prove" contained within each of the Interrogatories and Requests.

The court finds that the Interrogatories and Requests as written may be violative of the work-product privilege because they require Plaintiffs' counsel to engage in a process of selective compilation of documents they believe "tend to prove" their case.  *See Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985) (holding that, in a case with voluminous discovery, "identification of the documents as a group will reveal . . . counsel's selection process, and thus his mental impressions, . . . identification of the documents as a group must be prevented to protect . . . counsel's work product"); *United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 414 (D. Md. 2005) (concluding that interrogatories seeking information that "tend[ed] to support" positions taken by the defendant "appear[ed] to seek work-product in terms of requiring the responding counsel to decide what information 'tends to support' a particular legal position").  The court, however, also recognizes that Defendants are entitled to discover the material facts that support Plaintiffs' claims.  As such, the court has endeavored to rewrite the Interrogatories and Requests.  The court presumes that its modifications will be less offensive to Plaintiffs as the language "tending to prove" is replaced by the benign and broader language

14

"intend to use at trial related to the contention."  While the court's language has the same effect of requiring Plaintiffs' counsel to select certain documents, it does not require Plaintiffs' counsel to select only those documents that they believe will prove their case.  Under the court's version, Plaintiffs' counsel must provide all documents related to a particular contention whether or not they believe the documents will prove their case.

### (1) Interrogatory No. 2 and Document Request No. 2

Interrogatory No. 2:  Identify all facts, documents, and data Plaintiffs intend to use at trial related to the contention that before a diagnosis of Ewing's sarcoma could be made by a pathologist, cytogenetic, or molecular genetic analysis (such as flourescence in situ hybridization (FISH) test, which relies on DNA, and/or a reverse transcriptasepolymerase chain reaction (RT-PCR), which relies on RNA) must be performed.  Also, identify all facts, documents, and data Plaintiffs intend to use at trial related to the contention that in May of 2003, Dr. Wagner knew or should have known that such tests needed to be performed prior to diagnosing Ewing's sarcoma, and that he disregarded this protocol.

Document Request No. 2:  Provide all documents Plaintiffs intend to use at trial related to the contention that before a diagnosis of Ewing's sarcoma could be made, cytogenetic or molecular genetic analysis, such as flourescence in situ hybridization (FISH) test, which relies on DNA, and/or a reverse transcriptase-polymerase chain reaction (RTPCR), which relies on RNA, test would need to be performed.  Also, identify all facts, documents, and data Plaintiffs intend to use at trial related to the contention that Dr. Wagner knew as of May 2003, that such tests needed to be performed prior to diagnosing Ewing's sarcoma and disregarded this protocol.

### (2) Interrogatory No. 5 and Document Request No. 8

Interrogatory No. 5:  Identify all facts, documents, and data Plaintiffs intend to use at trial related to the contention that Dr. Wagner's representation that Dr. Cheryl Coffin's diagnosis of Ewing's sarcoma was materially false and that the biopsy results mere suggested, rather than confirmed, that diagnosis.

Document Request No. 8: Provide all documents Plaintiffs intend to use at trial related to the contention that Wagner's representation that Dr. Cheryl Coffin's diagnosis of Ewing's sarcoma was materially false and that the biopsy results merely suggested, rather than confirmed that diagnosis.  In addition, identify all facts, documents, and data Plaintiffs intend to use at trial related to the contention that cytogenetic or molecular genetic testing was necessary to make a diagnosis of Ewing's sarcoma.

**(3) Interrogatory No. 6 and Document Request No. 9**

Interrogatory No. 6:  Identify all facts, documents, and data relating to Dr. Wagner's, Dr. Albritton's, and Lara Neiderhauser's research into IPT, including, but not limited to, facts, documents, and data regarding their IPT research that Plaintiffs intend to use at trial related to the contention that they located no negative information, but discounted the information that they did locate.

Document Request No. 9:  Provide all documents relating to Dr. Wagner's, Dr. Albritton's, and Lara Neiderhauser's research into IPT, including, but not limited to, facts, documents, and data regarding their IPT research that Plaintiffs intend to use a trial related to the contention that they located no negative information, but discounted the information that they did locate.

**(4) Interrogatory No. 7 and Document Request No. 10**

Interrogatory No. 7:  Identify all facts, documents, and data Plaintiffs intend to use at trial related to the contention that in August of 2003 that the Buryzinski Clinic provided chemotherapy services to children.

Document Request No. 10:  Provide all documents Plaintiffs intend to use at trial related to the contention that on August 8, 2003, the Buryzinski Clinic provided chemotherapy services to children.

**(5) Interrogatory No. 8 and Document Request No. 11**

Interrogatory No. 8:  Identify all facts, documents, and data Plaintiffs intend to use at trial related to the contention that Dr. Albritton and Dr. Johnston discussed Parker's medical status.

Document Request No. 11:  Provide all documents Plaintiffs intend to use at trial related to the contention that Dr. Albritton and Dr. Johnston, of St. Luke's Mountain States Tumor Institute, discussed Parker's medical status.

**(6) Interrogatory No. 9 and Document Request No. 12**

Interrogatory No. 9:  Identify all facts, documents, and data Plaintiffs intend to use at trial related to the contention that DCFS did not function independently from Primary Children's Medical Center, and, specifically, Dr. Wagner and Dr. Albritton.

Document Request No. 12:  Provide all documents Plaintiffs intend to use at trial related to the contention that DCFS did not function independently from PCMC, and, specifically, Dr. Wagner and Dr. Albritton.

Accordingly, the court GRANTS IN PART and DENIES IN PART Defendants' motion

to compel.  Plaintiffs must respond to the Interrogatories and Requests as rewritten by the court

within thirty (30) days of the date of this order.

**E.  Movants' motion to quash a subpoena served on the GAL and Plaintiffs' motion to strike and quash a subpoena served on the GAL**

Defendants served a subpoena on the GAL requesting a letter sent by Richard Jaffee, an attorney who represented Plaintiffs in 2003, to the GAL.  On October 23, 2007, the GAL produced the letter.  Immediately prior to the hearing, Defendants withdrew their opposition to the motion to quash subpoena to GAL.[15]  Accordingly, the court concludes that Movants' motion and Plaintiffs' motion are rendered MOOT.

**F.  Plaintiffs' motion to strike and quash a subpoena served on Mr. Nakamura and Plaintiffs' motion to quash a second subpoena served on Mr. Nakamura**

On August 15, 2007, Defendants served a subpoena on Mr. Nakamura, Plaintiffs' former attorney for most of the juvenile court proceedings, seeking his file (the "File") related to his representation of Plaintiffs.  Defendants assert that during Mr. Nakamura's deposition on August 14, 2007, he was unable to answer many key questions and needed to review the File to refresh his memory.  Immediately following Mr. Nakamura's deposition, Defendants served him with a subpoena seeking to discover the File.

Plaintiffs moved to strike and quash the subpoena on the grounds that Defendants failed to give Plaintiffs advance notice of the subpoena as required by United States District Court for the District of Utah Rule of Practice ("Utah local rule") 45-1.  *See* DUCivR 45-1.  While Defendants concede that they violated the notice requirement, they contend that they did so because the fact discovery deadline was only two weeks away.

---

[15] *See* docket no. 257.

On September 4, 2007, Defendants served a second subpoena on Mr. Nakamura, again seeking the File.  Plaintiffs filed a motion to quash the second subpoena asserting, inter alia, that the File is protected by the work-product and attorney-client privileges and that the subpoena is untimely as it was served four days after expiration of the fact discovery deadline.  At the hearing, the court indicated that it wanted further briefing regarding the issue of work-product privilege.  Defendants timely submitted their supplemental brief on October 31, 2007.[16]  While Plaintiffs' brief was due November 7, 2007, Plaintiffs did not submit their brief until November 9, 2007.[17]  On November 13, 2007, Defendants filed a second supplemental brief without leave of court.[18]  On November 14, 2007, Plaintiffs filed a motion to strike Defendants second supplemental brief or, alternatively, for leave to file a response.[19]  On November 15, 2007, Defendants filed a motion for leave to file their previously filed brief.[20]  On the same date, the court denied Plaintiffs' motion to strike; granted Plaintiffs' motion for leave to file a response, giving them until Monday, November 19, 2007, to file it; and granted Defendants' motion for leave to file.[21]  Plaintiffs timely filed their response.[22]

---

[16] *See* docket no. 259.

[17] *See* docket no. 265.

[18] *See* docket no. 269.

[19] *See* docket no. 272.

[20] *See* docket no. 276.

[21] *See* docket no. 277.

[22] *See* docket no. 280.

**(1) Notice and timeliness**

As was evident at the hearing on the motions, the court is unpersuaded by Plaintiffs'

notice and timeliness arguments.  While Utah local rule 45-1 does require that the party issuing

the subpoena provide notice to each party prior to the subpoena being served, in this instance,

with the discovery deadline two weeks away, it was reasonable for Defendants to serve the

subpoena on Mr. Nakamura immediately after his deposition without the required notice.

Furthermore, as noted by Defendants, Plaintiffs did have sufficient actual notice of the subpoena

as is evidenced by the instant motions.

**(2) Work-product privilege**

 Defendants contend that the File is not protected by the work-product privilege on the

following alternative grounds: (1) Mr. Nakamura waived the privilege by disclosing the File to

Plaintiffs' current counsel, (2) Mr. Nakamura's role in the juvenile court proceedings is a key

issue in this case and therefore the File is discoverable, and (3) Defendants have satisfied the

substantial need/undue burden requirements under rule 26(b)(3) of the Federal Rules of Civil

Procedure.  *See* Fed. R. Civ. P. 26(b)(3).  The court will address each of these arguments in turn.

First, the court concludes that Mr. Nakamura did not waive the work-product privilege by

disclosing the File to Plaintiffs' current counsel.  Attorney work product may be disclosed to

persons who share a common interest without waiving the privilege.  *See In re Qwest*

*Communications Intern. Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006) (recognizing that when

disclosure of work product is to a person with common interest, "the 'common interest' doctrine

provides an exception to waiver because disclosure advances the representation of the party and

the attorney's preparation of the case").  And frankly, the court finds Defendants' argument that

an attorney waives the work-product privilege merely by transferring a client's file to that

client's subsequent counsel to be without merit.  Accordingly, because disclosure of the File was

to Plaintiffs' subsequent counsel, the court rules that Mr. Nakamura has not waived the work-

product privilege on that basis.

Second, the court concludes that the key issue doctrine does not apply.  Defendants

contend that the File falls squarely within the key issue exception to the work-product privilege

because Mr. Nakamura represented Plaintiffs during the juvenile court proceedings and the

events surrounding the juvenile court case form the basis of Plaintiffs' complaint.  Defendants

also claim that Mr. Nakamura made misrepresentations to the juvenile court and thus Defendants

are entitled to the File to determine what basis Mr. Nakamura had for making those statements.

Defendants cite to an unpublished opinion out of the United Stated District Court for the

Eastern District of Pennsylvania to support the application of the key issue doctrine.  *See*

*Rhone-Poulenc Roper Inc. v. Home Indemnity Co.*, 1993 WL 106429 (E.D.Penn. 1993) (holding

that when the activities of counsel are directly at issue in a case, the work-product privilege does

not apply).  The court, however, does not consider the activities of Mr. Nakamura to be directly

at issue in this case.  While Mr. Nakamura's actions are related, they are not integral to this

matter.  Regardless, in this circuit, courts must apply the substantial need/undue burden test

under rule 26(b)(3) to determine whether or not an attorney's work product is discoverable.  *See*

*Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998) (stating

that the district court's conclusion that the plaintiffs had waived the work-product privilege by

"plac[ing] this material at issue by filing suit" without first applying the substantial need/undue

burden test was "faulty as a matter of law and thus constitutes an abuse of discretion").

Third, the court concludes that Defendants have not demonstrated that they are entitled to

discover Mr. Nakamura's work product under the substantial need/undue burden test.  "Rule

26(b)(3) of the Federal Rules of Civil Procedure prevents discovery of an attorney's work

product unless (1) the discovering party can demonstrate substantial need for the material and (2)

the discovering party is unable to obtain the substantial equivalent of the material by other means

without undue hardship."  *Id.*  There is a difference between fact work product and opinion work

product.  *See id.* at 704 n.12.  The substantial need/undue burden test set forth above applies only

to fact work product.  *See id.*  Although the Tenth Circuit has not ruled on the issue, most courts

have held that opinion work product is either absolutely immune from disclosure, or that a court

may order disclosure only upon a showing of a compelling or extraordinary need.  *See id.*

Defendants contend that they have a substantial need for the File because Plaintiffs "have

centered their complaint on the corruption of the juvenile court system."  Based on this,

Defendants assert that they need to know what Mr. Nakamura "knew about Ewing's Sarcoma,

Parker's test results, [Plaintiffs'] interaction with the doctors and DCFS, IPT, the need for

genetic testing, and all other relevant items that were brought up at the series of juvenile court

hearings in the summer of 2003."  Thus, it appears that Defendants are basically asking the court

for unfettered access to the File for a fishing expedition.  The court is unwilling to grant this kind

of access without a showing that there are particular documents in the File for which Defendants

have established a substantial need.  The court is likewise unwilling at this point to conduct an in

camera review of the entire File to determine which documents, if any, Defendants may

discover.  Furthermore, even assuming that Defendants have demonstrated a substantial need for

the File, they have failed to establish that they are  "unable to obtain the substantial equivalent of

the material by other means without undue hardship."  *See id.*

The court GRANTS Plaintiffs' motions and determines that Defendants are able to obtain

the substantial equivalent of the material by deposing Mr. Nakamura again after he has reviewed

the File.  As Defendants explained, during Mr. Nakamura's deposition, he had little recollection

of what had transpired during his representation of Plaintiffs in 2003.  Apparently, Plaintiffs'

counsel had not provided the File to Mr. Nakamura in order for him to refresh his memory prior

to his deposition.  Therefore, the court orders Plaintiffs to allow Mr. Nakamura to review the

File.  After Mr. Nakamura has reviewed the File, Defendants may depose Mr. Nakamura again

as to those areas of inquiry for which he could not recall.  At that point, should the need arise,

the court will consider specific requests for production of individual documents from the File.

### G.  Plaintiffs' motion to quash the Modern Health Clinic subpoena and Defendants' motion to compel the Modern Health Clinic to respond to the subpoena

Plaintiffs contend that Defendants' subpoena to the Modern Health Clinic should be

quashed because it was served several days after the expiration of fact discovery and does not

allow a reasonable time for compliance as required by Federal Rule of Civil Procedure

45(c)(3)(A)(i).  *See* Fed. R. Civ. P. 45(c)(3)(A)(i).  Furthermore, Plaintiffs assert that because the

subpoena was served only two days after the notice was filed, it did not meet the advance notice

requirement under to Utah local rule 45-1.  *See* DUCivR 45-1.

Defendants argue that it was not until the deposition of Dr. Judith Moore ("Dr. Moore"),

Parker's doctor at the Modern Health Clinic, taken on the last day for fact discovery, that they

learned that Dr. Moore had failed to produce all of Parker's medical records from the Modern

Health Clinic as required by the release of medical records (the "Release").  Dr. Moore testified

that Marietta Bergdorf ("Ms. Bergdorf"), an unlicensed doctor at the Modern Health Clinic, was

primarily responsible for Parker's treatment.  Dr. Moore also testified that Ms. Bergdorf took

notes on Parker's treatment but indicated that these notes were not produced.  Plaintiffs contend

that the Release was directed at Dr. Moore only, not to the Modern Health Clinic or to Ms.

Bergdorf.

Defendants attempted to serve the subpoena on Modern Health Clinic on August 31,

2007, but it was closed.  On the same day, Defendants filed a notice of intent to serve the

subpoena and a motion to extend the fact discovery deadline.   Defendants did serve the

subpoena on September 6, six days after the fact discovery deadline.

Again, for the same reasons articulated above, the court is unpersuaded by Plaintiffs'

timeliness argument.  Furthermore, the court finds that the Release authorized and required the

Modern Health Clinic to produce all of Parker's medical records; it was not limited to Dr.

Moore's records.  Accordingly, the court DENIES Plaintiffs' motion to quash and GRANTS

Defendants' motion to compel.  The Modern Health Clinic is ordered to produce all of Parker's

medical records, including Ms. Bergdorf's records, within thirty (30) days of the date of this

order.

### H.  Defendants' motion to extend the fact discovery deadline

Defendants assert that the fact discovery deadline should be extended to allow

Defendants to conduct a few remaining depositions.  Plaintiffs oppose the motion by arguing that Defendants have been allowed to conduct an extraordinary amount of discovery and thus should be precluded from further discovery.  The court GRANTS Defendants motion to extend the fact discovery deadline.  Because the court is sensitive to Plaintiffs' concerns, it is limiting discovery to (1) Mr. Nakamura's follow-up deposition, (2) Ms. Bergdorf's deposition, and (3) Judge Yeates's deposition.  Taking into consideration the approaching holiday season, the court extends the fact discovery deadline to January 21, 2008.  No further extensions will be granted.

**I.  Defendants' motion for a rule 16 scheduling and case management conference**

Defendants have asked this court to conduct a scheduling conference pursuant to rule 16 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 16(a).  Defendants wish to address management of the expected summary judgment motions, a briefing schedule, and ways to manage the voluminous evidence associated with the motions.  Plaintiffs do not oppose the motion.

At this point, the court DENIES Defendants' motion.  The court, however, directs counsel for all parties to confer in an effort to mutually resolve the above-mentioned issues.  Should any outstanding issues remain, Defendants may renew their motion at that time.

**J. Defendants' motion for extension of time for deadline for defendants' expert reports**

At the hearing, counsel indicated that this motion had been resolved.  Accordingly, the court concludes that Defendants' motion is MOOT.

## II.  CONCLUSION

In summary, **IT IS HEREBY ORDERED**:

1.  Defendants' motion to quash subpoenas to Cincinnati Children's Hospital and the COG[23] is **GRANTED IN PART AND DENIED IN PART**.  Defendants' motion is **GRANTED** with respect to the subpoena served on the Cincinnati Children's Hospital, and Defendants' motion is **DENIED** with respect to the COG.  The COG is ordered to produce documents responsive to the subpoena within thirty (30) days of the date of this order.  The documents requested in item no. 3 shall be disclosed only upon entry of a protective order to be negotiated by the parties.

2.  Plaintiffs' motion to compel with respect to a subpoena served on the University[24] is **GRANTED**, and the University is ordered to produce the requested documents within thirty (30) days of the date of this order.  The documents requested in item no. 1 shall be disclosed only upon entry of a protective order to be negotiated by the parties.

3.  Defendants' motion to compel production and inspection of Plaintiffs' computers[25] is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs shall produce Plaintiffs' home computer and crashed hard drive as specified in section I.C. above.

4.  Defendants' motion to compel responses to interrogatories and requests for production

---

[23] *See* docket no. 185.

[24] *See* docket no. 222.

[25] *See* docket no. 197.

of documents[26] is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs must respond to

the Interrogatories and Requests as rewritten by the court within thirty (30) days of the date of

this order.

 5.  Movants' motion to a quash subpoena served on the GAL[27] is **MOOT**.

 6.  Plaintiffs' motion to strike and quash a subpoena served on the GAL[28] is **MOOT**.

 7.  Plaintiffs' motion to strike and quash a subpoena served on Mr. Nakamura[29] is

**GRANTED**.  Plaintiffs' motion to quash a second subpoena served on Mr. Nakamura[30] is also

**GRANTED**.  However, the court orders Plaintiffs to allow Mr. Nakamura to review the File.

After Mr. Nakamura has reviewed the File, Defendants may depose Mr. Nakamura again as to

those areas of inquiry for which he could not recall.

 8.  Plaintiffs' motion to quash the Modern Health Clinic subpoena[31] is **DENIED**, and

Defendants' motion to compel the Modern Health Clinic to respond to a subpoena[32] is

**GRANTED**.  The Modern Health Clinic is ordered to produce all of Parker's medical records,

including Ms. Bergdorf's records, within thirty (30) days of the date of this order.

---

[26] *See* docket no. 201.

[27] *See* docket no. 205.

[28] *See* docket no. 209.

[29] *See* docket no. 211.

[30] *See* docket no. 227.

[31] *See* docket no. 230.

[32] *See* docket no. 247.

9.  Defendants' motion to extend the fact discovery deadline[33] is **GRANTED**.  Fact discovery must be completed by January 21, 2008.

10.  Defendants' motion for a rule 16 scheduling and case management conference[34] is **DENIED**.

11.  Defendants' motion for an extension of time for the deadline for Defendants' expert reports[35] is **MOOT**.

**IT IS SO ORDERED.**

DATED this 27th day of November, 2007.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[33] *See* docket no. 213.

[34] *See* docket no. 225.

[35] *See* docket no. 243.